IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WHITLEY KLINGLER, | ) | |
| | ) | |
| *Plaintiff,* | ) | 15-CV-1609 |
| | ) | |
| v. | ) | Thomas M. Durkin |
| | ) | |
| CITY OF CHICAGO; MAYASOL LLC, d/b/a | ) | |
| MCDONALD'S; CHICAGO POLICE OFFICER | ) | |
| MAAS (Star # 5237); CHICAGO POLICE | ) | |
| DETECTIVE JOHN E.CALLAGHAN | ) | |
| (Star # 20933); COMMANDER VOULGARIS | ) | |
| (Star #____); OFFICER BRANNIGAN (Star # 1593); | ) | |
| COUNTY OF WILL; SHERIFF OF WILL COUNTY | ) | |
| PAUL KAUPAS; and WILL COUNTY SHERIFF'S | ) | |
| DEPUTY MATTHEW GRIEBEL (ID # 01-913), | ) | |
| | ) | |
| *Defendants* | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Will County's motion for summary judgment. For the following reasons, that motion will be granted.

**DISCUSSION**

**A.  *RESPONDEAT SUPERIOR* CLAIMS AGAINST WILL COUNTY (COUNTS VI AND VII)**

In its previous memorandum opinion and order in this case, the Court held that, because Will County is not Defendant Griebel's employer,[1] Will County cannot

---

[1] Griebel is a Will County deputy sheriff. Griebel's employer is the Will County Sheriff. *See Wallace v. Masterson,* 345 F. Supp. 2d 917, 921 (N.D. Ill. 2004) ("A deputy sheriff is an employee of the sheriff, who is authorized to appoint and hire deputies." (citing 55 ILCS 5/3-6008)). The Sheriff "is an independently elected county officer [who] . . . is not an employee of the county in which [he] serves."

be held liable under a theory of *respondeat superior* for Griebel's alleged misconduct. R. 129 at 20-21 (*Klinger v. City of Chicago*, 2017 WL 736895, at *7 (N.D. Ill. Feb. 24, 2017); *see Moy v. Cnty. of Cook*, 640 N.E.2d 926, 931 (Ill. 1994) ("The sheriff is a county officer and, as such, is not in an employment relationship with the County of Cook. Therefore, the county may not be held vicariously liable for the sheriff's alleged negligent conduct."). Accordingly, the Court dismissed with prejudice Plaintiff's *respondeat superior* claims against Will County in Count VI (battery) and Count VII (IIED) of the First Amended Complaint. R. 129 at 21 (*Klinger,* 2017 WL 736895, at *7).

Plaintiff subsequently filed the Second Amended Complaint in which she alleged the identical *respondeat superior* claims against Will County as she had alleged in the First Amended Complaint. Included in the Second Amended Complaint is the same allegation found in the First Amended Complaint that Will County "is or was the employer of the Defendant Officer Griebel." R. 136 at 9 (¶ 62). That allegation, of course, is directly contrary to the law set forth in this Court's previous ruling as discussed above. Moreover, Plaintiff's realleging of *respondeat superior* claims against Will County in Counts VI and VII of the Second Amended Complaint is in direct contravention of the Court's earlier ruling dismissing Will County from those counts *with prejudice*. Because this Court dismissed Will County

---

*Martinez v. Hain*, 2016 WL 7212501, at *4 (N.D. Ill. Dec. 13, 2016) (quoting *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 636 (7th Cir. 2009) (citation omitted)) (internal quotation marks omitted). Because Griebel is employed by the Sheriff and the Sheriff is not an employee of Will County, Griebel is not an employee of Will County.

from Plaintiff's *respondeat superior* claims with prejudice, and because those claims are without legal merit for the reasons previously given in the Court's February 24, 2017 memorandum opinion and order, the Court now enters summary judgment in favor of Will County on Counts VI (battery) and VII (IIED) of the Second Amended Complaint.[2]

### B. INDEMNITY CLAIM AGAINST WILL COUNTY (COUNT V)

The only claim against Will County that survived Will County's motion to dismiss the First Amended Complaint was Count V, which asserted a claim against Will County for "[i]ndemnity . . . pursuant to 745 ILCS 10/9-102." R. 62 (¶¶ 57-59); *see* R. 129 at 21 (*Klinger,* 2017 WL 736895, at *7). Plaintiff realleges that same claim in Count V of the Second Amended Complaint. *See* R. 136 at 8-9 (¶¶ 61-63).

An indemnity claim against a county arises out of *Carver v. Sheriff of LaSalle County, Illinois*, 243 F.3d 379 (7th Cir. 2001) (*Carver I)*. In that case, the Seventh Circuit was faced with the "recurring question" of "[w]ho pays official-capacity judgments in Illinois when the wrongdoer is an independently-elected officer," like a county sheriff (or one of his appointed deputies)? *Id.* at 381. Independently elected officials "lack authority to levy taxes or establish their own budgets. This leads the independently-elected officers to contend that the counties must pay; but the counties, which are unable to control the conduct of the officers, insist that they

---

[2] Having ignored the Court's guidance in its first memorandum opinion and order in this case concerning the proper naming of defendants in litigation against local governmental entities as set forth above, and having also made other pleading errors as spelled out later herein, it is the Court's hope that Plaintiff's counsel will take the lessons in this opinion and apply them to any future lawsuits they intend file in this court.

3

cannot be held liable because an official-capacity judgment runs against the *office* and not against an 'employee' of the county." *Id.* (emphasis in original). The Seventh Circuit certified the question to the Supreme Court of Illinois, *id.* at 386, which, in its response, considered whether Section 9-102 of the Local Governmental and Governmental Employees Tort Immunity Act applied to the situation. *See Carver v. Sheriff of La Salle Cnty.*, 787 N.E.2d 127, 135-40 (Ill. 2003) (*Carver II*). Section 9-102 states that

> A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article. . . . A local public entity may make payments to settle or compromise a claim or action which has been or might be filed or instituted against it when the governing body or person vested by law or ordinance with authority to make over-all policy decisions for such entity considers it advisable to enter into such a settlement or compromise.

745 ILCS 10/9-102. The Supreme Court of Illinois held that the "office of sheriff" is a "local public entity" within the meaning of Section 9-102, and, therefore, that Section 9-102 "authorizes the sheriff (as the local public entity) to pay any judgment or settlement for compensatory damages for which the office of the sheriff is liable." *Carver II*, 787 N.E.2d at 138. As a result, the court held, only the county sheriff has authority under Section 9-102 "to settle litigation filed against the sheriff's office and to direct the office to pay that settlement." *Id.*

Pursuant to *Carver II*, if Griebel was acting within the scope of his employment, Section 9-102 imposes *respondeat superior* liability on his employer,

4

which is the Sheriff's Office, not Will County. Yet Count V of the Second Amended Complaint is labeled "745 ILCS 10/9102–Indemnity," and seeks to hold Will County, but *not* the Sheriff's Office, liable as the "employer of the Defendant Officer Griebel" for any judgment entered against Griebel. R. 136 at 8-9 (¶¶ 61-63). Even though as written Count V is improper, Plaintiff is correct to include Will County in this lawsuit. This is because, "although the sheriff has authority to settle claims filed against the sheriff's office pursuant to section 9–102,[3] the statute is silent with respect to the specific mechanism for funding the judgment." *Carver II*, 787 N.E.2d at 138. The county sheriff itself does not have access to funds to pay a settlement or judgment because he lacks the authority to levy taxes or establish a budget. *Id.* To resolve this "dilemma," the *Carver II* court turned to statutory law that provides "that the sheriff's office is to be financed by public funds appropriated to it by the county board." *Id.* (citing 55 ILCS 5/4-6003; 55 ILCS 5/5-1106). Accordingly, the court held, "the county is obligated to provide funds to the county sheriff to pay official capacity judgments entered against the sheriff's office." *Id.*

After receiving this direction from the Illinois Supreme Court regarding the role the county versus the sheriff's office plays in a lawsuit brought to recover for injuries sustained as a result of the conduct of a sheriff's office employee, the Seventh Circuit opined on "an additional point of federal law," which the court said flowed from the *Carver II* decision. According to the Seventh Circuit, "[b]ecause

---

[3] The issue before the court in *Carver II* related to the settlement of claims, but the court made clear that the statute treats settlements and judgments the same. *Carver II,* 727 N.E.2d at 140 ("the plain language of section 9–102 belies the county's assertion that settlements are to be treated differently than judgments").

5

state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver v. Sheriff of LaSalle Cnty., Illinois*, 324 F.3d 947, 948 (7th Cir. 2003) (*Carver III*) (citing Fed. R. Civ. P. 17). Thus, the court held, *Carver II* gives rise to the rule "that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." *Id.*

What this all means for the present case is that, because of the peculiar relationship created by the Illinois statutory scheme between a sheriff's office and the county, Plaintiff needed to sue both entities. *See, e.g., Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 517 (7th Cir. 2007) ("we agree with the plaintiffs that Bureau County would have been a necessary party to the case *if* the complaint had stated a claim *against the Sheriff* in his official capacity") (emphasis added). But Plaintiff has bypassed the Sheriff's Office entirely in the Second Amended Complaint. While Plaintiff named the Will County Sheriff as a defendant in this case, the only claim against him was a *Monell* claim in the First Amended Complaint that was dismissed and not re-pled in the Second Amended Complaint.[4]

---

[4] Both the First Amended Complaint and the Second Amended Complaint name Will County Sheriff Kaupas, not the Sheriff's Office, and allege that Sheriff Kaupas is being sued in his "individual capacity." *See* R. 62 at 2-3 (¶ 7); R. 136 at 3 (¶ 8). But no allegations were or are made against Sheriff Kaupas that would give rise to individual liability. Instead, the only allegations relevant to Kaupas's liability were in the dismissed *Monell* allegations in the First Amended Complaint of a policy and/or custom to inadequately supervise and train deputy sheriffs. *See* R. 62 at 13-14. A *Monell* claim seeks to impose *entity* liability, not individual liability on the official in charge of the entity. Therefore, Sheriff Kaupas should have been named in his official capacity rather than in his individual capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (the real party in interest when a public

A further pleading problem is that, notwithstanding that she labels her claim as being one for "indemnification," she continues to improperly *allege* a claim against Will County for *respondeat superior* liability pursuant to Section 9-102 rather than a claim for indemnification under *Carter II*.

To correct these problems, when she filed the Second Amended Complaint Plaintiff should have followed the Court's direction in its previous memorandum opinion order and substituted the Sheriff's Office for Will County as a defendant in Counts V, VI, and VII, which all seek *respondeat superior* liability pursuant to Section 9-102. She could have then added a separate indemnity claim against Will County pursuant to *Carver II*.[5] Having failed to do so and with the *Monell* claim against the Sheriff's Office now out of the case, Plaintiff has no pending claim against the Sheriff's Office, which means the Second Amended Complaint does not present a live controversy under *Carver II* for indemnification by the County. *See, e.g., Wallace,* 345 F. Supp. 2d at 925 ("[T]he County must pay for a tort judgment *entered against* [a sheriff deputy] *for which the Sheriff is directed to pay* by § 9–102 or is found vicariously liable under the doctrine of *respondeat superior.*") (emphasis added); *Cooper v. Office of the Sheriff of Will Cnty.*, 333 F. Supp. 2d 728, 736-37 (N.D. Ill. 2004) (Will County "is a named defendant because of its duty to indemnify

---

employee is sued in his official capacity is the entity itself). To reflect that the only viable claim against Sheriff Kaupas is in his official capacity, the Court has referred herein to the Sheriff's Office rather than to Sheriff Kaupas by name. *See Luckett v. Dart,* 2017 WL 3386117, at *1 n.1 (N.D. Ill. Aug. 7, 2017).

[5] To be fair, the Court's ruling did not direct Plaintiff to replead her claims. But when she did, she should have made the changes that were necessary to comply with the law as set forth in the Court's ruling.

7

*the Sheriff's Office* for judgments *rendered against it*") (emphasis added). Technically, summary judgment in favor of Will County should be entered on the indemnity claim in Count V of the Second Amended Complaint for this reason alone.

Notwithstanding the above, Will County proceeds as if it had agreed to the addition of the Sheriff's Office as a defendant in Counts V, VI, and VII. The County seeks summary judgment in its favor on Plaintiff's indemnity claim against it on the ground that, if the Sheriff's Office has no *respondeat superior* liability under Section 9-102, then Will County has no indemnification liability. The County's approach will work only because the Sheriff's Office and Will County are represented by the same attorneys (otherwise, the County would have no authority to agree to add the Sheriff's Office as a defendant in Plaintiff's *respondeat superior* claims). However, the Sheriff's Office must actually be added to those claims for there to be a live controversy. Therefore, the Court *sua sponte* orders that the Second Amended Complaint be amended to add the Sheriff's Office as a defendant in Counts V, VI, and VII. Further, the Second Amended Complaint is amended to reflect that the indemnity claim against Will County applies to the claims against the Sheriff's Office in Counts V, VI, and VII.[6]

---

[6] As currently written, Plaintiff separated her indemnity claim against Will County between Count V (relating to Plaintiff's § 1983 claims against Griebel) and Counts VI and VII (relating to Plaintiff's state tort claims against Griebel). Because Will County has been dismissed with prejudice from Counts VI and VII, the indemnity claim against it in Count V must be broadened in scope to include the state tort claims as well as the § 1983 claims.

### C. *RESPONDEAT SUPERIOR* LIABILITY OF THE SHERIFF'S OFFICE UNDER SECTION 9-102

Will County argues that the undisputed facts show that the Sheriff's Office has no *respondeat superior* liability for Griebel's alleged conduct in this case because Griebel was not acting within the scope of his employment, as required for the Sheriff's Office to be held liable for either Plaintiff's state law or § 1983 claims against Griebel. The Court agrees.[7]

"To ascertain when an employee's conduct is within the scope of employment, the Illinois Supreme Court has adopted § 228 of the Restatement (Second) of Agency (2004)." *Copeland v. Cnty. of Macon*, 403 F.3d 929, 932 (7th Cir. 2005) (citing *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989)). Section 228 provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and place limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master; and

---

[7] Because the Court agrees that Griebel was not acting within the scope of his employment, the Court need not address Will County's other argument that Griebel also was not acting under color of law for purposes of Plaintiff's § 1983 claims against Griebel. *See Anderson v. Moussa,* 250 F. Supp. 3d 344, 351 (N.D. Ill. 2017) ("[E]ven if [the officer] was acting under color of state law, that would not by itself mean that he was acting within the scope of his employment. And because there is no *Monell* claim against the City, the court's conclusion that [the officer] did not act within the scope of his employment relieves the City of any liability in this case. It is therefore unnecessary at this point to resolve whether [the officer] acted under color of state law.").

> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (2004).

The Court agrees with Will County that Plaintiff has not put forth a disputed jury question for finding that Griebel's conduct satisfies either the "time and place limits" of the Restatement or the requirement that Griebel's conduct be "actuated, at least in party, by a purpose to serve the master" (hereinafter "the purpose requirement"). In particular, the Court finds Will County's citation to *Anderson* on both points persuasive. In *Anderson,* Judge Feinerman held that a City of Chicago police officer was not acting within the scope of his employment when he attempted, as an off-duty officer in civilian attire, to initiate an arrest while on personal business outside the courthouse in Wheaton, Illinois. 250 F. Supp. 3d at 346. Judge Feinerman's decision sets forth the relevant law and analysis, which the Court will not go into here except to address the specific points raised by Plaintiff in opposition to Will County's summary judgment motion.

First, contrary to Plaintiff's contention, *Doe v. City of Chicago,* 360 F.3d 667, 672 (7th Cir. 2004), does not state an absolute rule against deciding the scope of employment issue at the summary judgment stage. For instance, *Anderson* was decided at the summary judgment stage. *Doe* merely observes that the scope issue cannot be resolved if facts concerning the officer's conduct that are relevant to the

scope issue are in dispute. Where the facts relevant to the scope issue are not in dispute, or where, even under the facts as alleged by the plaintiff, the scope issue must be decided against the plaintiff as a matter of law, there is no reason to defer resolution of that question until after a trial on the plaintiff's claims against the officer in question. *See, e.g., Stern v. Ritz Carlton Chi.,* 702 N.E.2d 194, 196 (Ill. App. 1998) ("if no reasonable person could conclude from the evidence that an employee was acting within the course of employment" then the court should "hold as a matter of law that the employee was not so acting") (internal quotation marks and citation omitted). The Court can decide the scope question here by reference to undisputed facts together with any disputed facts resolved, for purposes of this opinion only, in Plaintiff's favor.

Second, Griebel's belief (as stated at his deposition) that he has authority as a sworn officer to step in and protect people who are at risk of harm regardless of where he is or what he is doing at the time, does not establish the existence of disputed issues of fact on the purpose requirement. Griebel may believe he had the authority as a Will County Deputy Sheriff to act as he did when he was at the McDonald's in Cook County, but that belief does not mean his actions were actuated by a *purpose to serve* the Will County Sheriff's Office. In *Anderson*, the plaintiff argued that the Chicago police officer was acting within the scope of his employment when he initiated an arrest while off-duty on personal business in a distant county because the City of Chicago Police Department regulations state that one goal of the Department is "[e]nforcement of all laws and ordinances." 250

11

F. Supp. 3d at 349. Judge Feinerman rejected the notion that "when the regulations say 'all laws and ordinances,' they truly mean *all* laws and ordinances," because "that would mean that a Chicago police officer serves the City's goals when he nabs a suspected wrongdoer *anywhere*—not just elsewhere in Illinois but also, presumably, while vacationing in Hawaii. An interpretation of the CPD Regulations that compels officers to enforce a littering ban in Honolulu cannot be correct." *Id.* at 250 (emphasis in original). As Judge Feinerman observed, "[t]he Chicago Police Department's law enforcement responsibilities within the city limits are daunting enough as it is, and Wheaton has its own police force to handle matters in Wheaton." *Id.* Thus, *Anderson* holds that "[o]nly conduct that *advances an officer's employer's particular objectives,* not those of other entities that may have related goals, satisfies the third criterion." *Id.* (emphasis added). Here, Griebel's stated purpose of providing a police function while at the McDonald's outside his jurisdictional authority[8] does not advance the particular objectives of his employer, the Will County Sheriff's Office, which is not responsible for policing in the City of Chicago.

---

[8] Griebel's stated purpose was actually less clear than that. *See* R. 168-3 at 38 (Griebel Dep. 140) ("**A.** "I'm a sworn police officer in the State of Illinois. So I have jurisdiction throughout the State of Illinois. . . . I have authority to step in and protect some people that I feel are about to do harm towards each other. **Q.** Is that because it's your duty as a police office? **A.** That is correct."); *see also id.* at 16 (Griebel Dep. 51) (**Q.** So when you made your decision to get involved, why did you do it? **A.** Well, I got involved because that's what I do. I help people. And these people needed help. . . . People were drinking and tempers were flaring, and . . . I wanted to restore peace."). But as the Court previously said, it draws all reasonable inferences in Plaintiff's favor.

Plaintiff argues that Griebel's subjective beliefs raise a disputed fact question on this issue. But "[t]he law is well-settled in Illinois that an agent cannot confer power himself and his agency or authority cannot be established by showing what he said or did." *Wolf v. Liberis*, 505 N.E.2d 1202, 1206 (Ill. App. 1987) (citations omitted). And while Illinois law makes it the "duty of every [law enforcement officer], when a criminal offense or breach of the peace is committed or attempted in his or her presence, forthwith to apprehend the offender and bring him or her before a judge, to be dealt with according to law; to suppress all riots and unlawful assemblies, and to keep the peace," 725 ILCS 5/107-16, this provision does not speak to jurisdictional authority. Pursuant to statute, that authority generally is limited, *i.e.,* "[a] police officer has authority to act" only in "his or her police district, which consists of [t]he territory which is embraced within the corporate limits of adjoining municipalities within any county in this State." *Harroun v. Addison Police Pension Bd.*, 865 N.E.2d 273, 278 (Ill. App. 2007) (internal quotation marks omitted) (citing 65 ILCS 5/7-4-8 and 65 ILCS 5/7-4-7). Outside of his or her police district (or any other exception),[9] a police officer may only make a citizen's arrest.

---

[9] There are certain exceptions to the jurisdictional limitation that do not apply here, such as when an arrest is made in a municipality within the same county as the officer's jurisdiction. *See Harroun*, 865 N.E.2d at 278 (citing *People v. Kirvelaitis*, 734 N.E.2d 524, 527 (Ill. App. 2000)); *People v. Durham*, 390 N.E.2d 517, 519 (Ill. App. 1979) ("a county deputy sheriff may travel into an adjoining county and arrest an individual whom he reasonably believes has committed an offense *within the county of the officer's employment* so long as the arrest itself is valid") (emphasis added); *see also* 725 ILSA 5/107-4 (a police officer has the authority to act outside his district if (1) he "is engaged in the investigation of criminal activity that occurred in the officer's primary jurisdiction"; (2) he "becomes personally aware of the immediate commission of a felony or misdemeanor" *while on duty*; or (3) he is

13

*Id.* (citing *People v. Kleutgen*, 833 N.E.2d 416, 419-20 (Ill. App. 2005)); *see also People v. Gutt*, 640 N.E.2d 1013, 1017 (Ill. App. 1994) ("when outside her jurisdiction, a police officer's right to arrest is no greater than that of a private citizen"). The City of Chicago does not fall within the jurisdictional authority of a Will County deputy sheriff, and if Griebel was acting as a citizen to restore the peace, he was not acting within the scope of his employment.

Fourth, Plaintiff relies on the accoutrements of Griebel's office as a deputy sheriff, and specifically, his badge, uniform, and appearance as being a police officer, to argue that he acted within the scope of his employment. In the first place, the record does not support Plaintiff's contention that Griebel presented himself as a police officer. There is no evidence in the record to dispute Griebel's testimony that he arrived at the McDonald's that night on a party bus as part of a birthday celebration for a friend. He was dressed in a kilt and had his bagpipes with him, which, at the request of his friend's fiancé, he had been playing at various stops along the party bus route. Klingler unequivocally testified at her deposition no less than *eleven* times[10] that she did *not* know that Griebel was a police officer until after the night in question. She thought he was "just dressed for St. Patty's," and she first realized he might be an officer when she saw from the video provided by McDonald's afterwards that he had been wearing an Emerald Society badge

---

requested by an appropriate State or local law enforcement official, also *while on duty*, to render aid or assistance outside his primary jurisdiction).

[10] *See* R. 168-4 at 27 (Klingler May 24, 2017 Dep. 104); R. 168-5 at 14, 25, 33, 34, 42, 43, 47 (Klingler Apr. 17, 2017 Dep. 47, 92, 93, 123, 129, 158 (3 times), 162, 178).

14

(although it was her parents, and not her, who suspected the badge was from the Emerald Society, because she did not even know what the Emerald Society was). *See* R. 168-4 at 33, 34 (Klingler Dep. 123, 129); *see also* R. 168-4 at 27 (Klingler Dep. 104) (She was not aware of the badge until "after the fact" when her boyfriend Tyler Nuñez pointed it out to her.).

Plaintiff argues, however, that Nuñez testified he saw Griebel's Emerald Society badge[11] and thought he was an officer who could arrest him, R. 181-1 at 19-20 (Nuñez Dep. 73-74), and that, in addition, Griebel testified that Klingler called him a "fucking cop," R. 168-3 at 28 (Griebel Dep. 98). But even assuming there is a disputed issue of fact regarding whether, because of his Emerald Society badge, Klingler, Nuñez, or both suspected Griebel was a police officer, they thought he was a *Chicago* police officer, and did not know until late in the current proceedings that he was a Will County deputy sheriff. And even if they did know who his employer was, the facts of this case *still* are not comparable to the facts in *Kenya v. County of Kane*, 2016 WL 7187264 (N.D. Ill. Dec. 12, 2016), cited by Plaintiff, where the court held *on a motion to dismiss* that an off-duty deputy *might have* acted within the scope of his employment when he used instrumentalities of his office—specifically his gun and his badge—and told the plaintiff that he was a police officer during the encounter. *Id*. at *1. The allegations in *Kenya* also indicated the encounter took place in Aurora, which is a city that lies partly within Kane County. *Id*. Because the

---

[11] Griebel testified that the badge was "a five-point star that says Pipes and Drums, the Emerald Society of the Chicago Police Department." R. 168-3 at 10 (Griebel Dep. 28).

15

deputy allegedly used his badge and gun, identified himself as an officer, and did so in a place that was directly adjacent to the deputy's jurisdiction, the court was unable to determine from the allegations alone whether the deputy was acting within the scope of employment at the time of the encounter. *Id.* at *2.

Unlike *Kenya,* "[t]his is not a case in which [Griebel] was conducting police business within the city limits and briefly strayed into a neighboring town." *Anderson*, 250 F. Supp. 3d at 348. It is also undisputed here that Griebel was wearing his Emerald Society uniform, which is a bagpiper's kilt, not a police officer's uniform, that he did not have his Will County Deputy Sheriff's badge or gun, and that he did not identify himself as a police officer when he attempted to, as he said, "keep the peace."[12] And even if he had identified himself as a police officer either by words or through his Emerald Society costume or badge, without more that would not establish he in fact was acting either in whole or in part to advance his employer's interests. Indeed, his employer had *no* interest in keeping the peace in the City of Chicago, so Griebel could not have been acting to further his employer's interest regardless of his assertion of authority to so act and regardless of the fact

---

[12] *See* R. 168-3 at 55-56 (Griebel Dep. 209-10) (Griebel did not tell anybody at the McDonald's prior to speaking with a Chicago Police officer immediately before getting on the party bus to go home, that he was a law enforcement officer; he did not ever tell Klingler or Nuñez that they were under arrest, nor did he ever threaten them with arrest; and he did not have anything with him that night from the Sheriff's Office, including his badge or gun).

16

that he, as Plaintiff argues, "used his 'training and experience'" (R. 182 at 10) in the ensuing skirmish.[13]

Finally, Plaintiff relies on a line of cases suggesting that the scope of employment analysis ought to be broadened when the employee in question is a police officer. *See* R. 182 at 5. To begin with, Plaintiff cites no case law that would indicate the Illinois Supreme Court has adopted that view. Moreover, and in any event, the argument is misplaced in the context of the facts of this case. The theory advanced in the case law to which Plaintiff cites is not that the scope question ought to be expanded *whenever* a police officer is involved. Instead, Judge Posner explained the rationale of the theory as follows:

> Indispensable to law and order, [a police officer] is also and inescapably a dangerous instrumentality. A person who keeps a tiger in his backyard is strictly liable for the injuries caused by it, and when an independent contractor is hired to conduct an abnormally dangerous activity the principal is strictly liable for injuries caused by the activity. Maybe by analogy a police department should be

---

[13] *See, e.g., Anderson,* 250 F. Supp. 3d at 350 (rejecting argument that police officer was acting within the scope of his employment because he "identified himself as a police officer, gave police-like orders, and showed his badge after the altercation" because those actions do "not mean that [the officer's] actions in DuPage County were undertaken in service to the City") (citing *Wolf*, 505 N.E.2d at 1206 (holding that an off-duty officer's "assertion to bystanders that he was 'on the job'" at the scene of a car accident did not place him within the scope of employment); *Rivera v. City of Chicago*, 2005 WL 2739180, at *1-2, 6 (N.D. Ill. Oct. 24, 2005) (holding that, where an officer identified himself as a police officer, stated that he had a search warrant, and wore a "badge pouch" during unauthorized off-duty misconduct, no reasonable jury could find that the officer acted on behalf of the police department); *Garcia v. City of Chicago*, 2003 WL 1715621, at *11-12 (N.D. Ill. Mar. 20, 2003) (holding that an off-duty police officer's assault on his girlfriend's ex-boyfriend was not "committed for any reason other than his pure personal benefit" and thus was not actuated by a purpose to serve the police department, even though he "flashed his badge and gun and announced that he was a cop")).

17

> held strictly liable for torts of police officers who use their official powers to commit the torts. . . . As in the ultrahazardous-activity cases, the power of a rogue police officer to do harm is so great that more than ordinary care on the part of his employer may be required in order to provide adequate protection to the public.

*Doe*, 360 F.3d at 671 (internal citations omitted).

Reliance on this theory of liability in this case is misplaced because the issue addressed by Judge Posner in *Doe* was solely whether the purpose requirement of the Restatement test should be expanded. Although Judge Posner did not address whether the police officer in that case was officially off- or on-duty when he committed the tort in question, the officer clearly was otherwise acting within the scope of his employment in terms of time and place—he was a police officer in the same district as the plaintiff whose house he broke into, and he obtained her address from a previous traffic stop he had made while on duty in his district.

Unlike the officer in *Doe,* Griebel did not have at the time of the alleged torts and, outside of special circumstances such as if he were on a special assignment for Will County, he never did or will have as a deputy sheriff in Will County any official power to act as a law enforcement officer in the City of Chicago. To simultaneously stretch the limits of both the time and place requirement and the purpose requirement, as the Court would have to do here if it were to adopt Plaintiff's argument, would virtually nullify the scope of employment limitation on *respondeat superior* liability and render a law enforcement employer liable for any tort committed by its officers regardless of place, time, or context. Even accepting in its entirety Plaintiff's version of the facts, this is not a case of a "rogue police officer"

18

who committed a tort by abusing the power he would not otherwise have but for his employment as a deputy sheriff *in Will County*. As discussed, the McDonald's was not located within the jurisdiction of Griebel's employer and Griebel was not on-duty at the time of the incident. *See Anderson*, 250 F. Supp. 3d at 348 ("Anderson points to no case in which a police officer who was *both* off-duty *and* far outside his jurisdiction was held to be acting within the scope of his employment.") (emphasis in original). Griebel was not at the McDonald's on Will County Sheriff's Office business; he was not wearing his deputy sheriff's uniform; and he did not display his deputy sheriff's badge. He did not serve any interest of Will County when he took the actions that he did, and there is no evidence that he represented otherwise to Plaintiff or anyone else. Even if Judge Posner's observations in *Doe* were the law, they would not help Plaintiff here.

## Conclusion

For the foregoing reasons, Defendant Will County's motion for summary judgment, R. 166, is granted.

ENTERED:

*Thomas M. Durkin*
Thomas M. Durkin
United States District Judge

Dated: October 20, 2017